**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| JEFFREY MARK PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09-cv-01078 (WWE) |
| | ) | |
| AECOM USA, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**DEFENDANT AECOM USA, INC.'s MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**

Dated: September 3, 2009

*Of Counsel:*

    Dov Kesselman (Federal Bar No. phv03559)
    Dana Fleming (Federal Bar No. phv03558)

SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500

Attorneys for Defendant AECOM USA, Inc.

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..........................................................................................2

FACTUAL BACKGROUND ...........................................................................................3

ARGUMENT ..................................................................................................................6

I.      PLAINTIFF'S CLAIMS OF DISCRIMINATION AND RETALIATION MUST BE DISMISSED BECAUSE HE FAILS TO ALLEGE  FACTS SUFFICIENT TO ESTABLISH A PLAUSIBLE CLAIM.........................6

      A.    Plaintiff's Conclusory Allegations Do Not Approach the Required Standard....................................................................6

      B.    Plaintiff Fails to State a Claim for Race Discrimination (Counts I, III). ...............................................................................8

      C.    Plaintiff Fails to State a Claim for Retaliation (Counts II, III). .....12

II.     PLAINTIFF'S INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIMS (COUNT IV) MUST BE DISMISSED. ......................................................................................17

      A.    Plaintiff Cannot State a Plausible Claim for Intentional Infliction of Emotional Distress....................................................................17

      B.    Plaintiff Cannot State a Claim for Negligent Infliction of Emotional Distress. ......................................................................19

CONCLUSION...............................................................................................................21

NY1 26582857.3

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Adams v. Hartford Courant,
   No. 03-0477, 2004 WL 1091728 (D. Conn. May 14, 2004)........................................18, 19, 20

Ashcroft v. Iqbal,
   129 S. Ct. 1937 (2009).........................................................................3, 6, 7, 8, 11, 12, 13, 14

Bansavich v. McLane Company, Inc.,
   Civ. No. 3:07-cv-702, 2008 WL 4821320 *2 (WWE) (D. Conn. Oct. 31, 2008) ....................8

Baptista v. Hartford Bd. of Educ.,
   No. 08-1890, 2009 WL 2163133 (D. Conn. Jul. 21, 2009) .................................................7, 12

Bell Atlantic Corp. v. Twombly,
   127 S.Ct. 1955 (2007)........................................................................................7, 8, 12, 13

Copeland v. Home and Cmty. Health Servs., Inc.,
   285 F.Supp.2d 144 (D. Conn. 2003)...................................................................................19, 20

Crawford-Mulley v. Corning Inc.,
   194 F. Supp. 2d 212 (W.D.N.Y. 2002), aff'd, 2003 U.S. App. LEXIS 739 (2d Cir.
   Jan. 17, 2003).......................................................................................................................9, 13

Figueroa v. New York Health & Hosp. Corp.,
   500 F. Supp. 2d 224 (S.D.N.Y. 2007)..................................................................................9, 13

Fogleman v. Mercy Hosp. Inc.,
   283 F.3d 561 (3d Cir. 2002)...............................................................................................15, 16

Holt v. JTM Industries,
   89 F.3d 1224 (5th Cir. 1996) .................................................................................................16

Joiner v. Chartwells and Compass Group North America,
   500 F.Supp.2d 75 (D. Conn. 2007)....................................................................................10, 13

Koschoff v. Henderson,
   1999 WL 907546 (E.D. Pa. 1999) .....................................................................................10, 13

Logan v. SecTek, Inc.,
   No. 08-00209, 2009 WL 1955441 (D.Conn. Jul. 8, 2009) ............................................7, 8, 14

Lorenzi v. Connecticut Judicial Branch,
   620 F. Supp. 2d 348 (D. Conn. 2009).....................................................................................18

NY1 26582857.3

Miner v. Town of Cheschire,
    126 F. Supp. 2d 184 (D. Conn. 2000).....................................................................18

Mutts v. Southern Connecticut State University,
    Civ. No. 3:04-cv-1746 (MRK), 2006 WL 1806179 (D. Conn. June 28, 2006), aff'd
    242 Fed. Appx. 725, 727 (2d Cir. June 15, 2007)............................................14, 15

Nicastro v. Runyon,
    60 F. Supp. 2d 181 (S.D.N.Y. 1999)................................................................10, 13

Ruggiero v. Yale University,
    Civ. No. 3:06-cv-1165 (WWE), 2007 WL 2684631
    (D. Conn. Sept. 10, 2007) ................................................................7, 17, 18, 19, 20

Samuels v. Air Transp. Local 504,
    992 F.2d 12 (2d Cir. 1993).......................................................................5, 6, 10, 11

Schug v. The Pyne-Davidson Co.,
    Civ. No. 99-1493, 2001 U.S. Dist. Lexis 21246 (D. Conn. Dec. 10, 2001) ...........20

Sgarlata v. Viacom Inc.,
    No. 02-Civ-7234, 2005 WL 659198 *7 (S.D.N.Y. Mar. 22, 2005)........................10

Shah v. James P. Purcell Associates, Inc.,
    No. 05-00306, 2007 WL 1630311 (D. Conn. 2007)..........................................9, 13

Smith v. Riceland Foods Inc.,
    151 F.3d 813 (8th Cir. 1998) ...............................................................................16

South Cherry Street, LLC v. Hennessee Group LLC,
    No. 07-3658, 2009 WL 2032133 (2d Cir. Jul. 14, 2009).........................................8

Suntoke v. PSEG Power Connecticut, LLC,
    No. 06-1520, 2009 WL 413130 (D. Conn. 2009)..............................................9, 13

Thompson v. North American Stainless, LP,
    567 F.3d 804 (6th Cir. June 5, 2009) ..............................................................15, 16

White v. Martin,
    23 F. Supp. 2d 203 (D. Conn. 1998), aff'd, 198 F.3d 235 (2d Cir. 1999)...............18

STATE CASES

Ancona v. Manafort Bros., Inc.,
    56 Conn.App. 701 (2000) .....................................................................................17

Appleton v. Board of Educ. of the Town of Stonington,
    254 Conn. 205 (2000) ...........................................................................................17

Buckman v. People Express, Inc.,
  205 Conn. 166 (1987) ...............................................................................................19

Carrol v. Allstate Ins. Co.,
  262 Conn. 433 (2003) ...............................................................................................19

Parsons v. United Technologies Corp.,
  243 Conn. 66 (1997) .................................................................................................19

**FEDERAL STATUTES**

42 U.S.C. § 2000e-2(a) ...................................................................................................16

42 U.S.C. § 2000e-3(a) ............................................................................................14, 16

**STATE STATUTES**

Connecticut Fair Employment Practices Act, Conn. Gen Stat. § 46a-60(4) ..................14

Title VII of the Civil Rights Act of 1964 ....................................................2, 14, 15, 16

**RULES**

Fed. R. Civ. P. 12(b)(6) ...............................................................................................2, 7

NY1 26582857.3

Defendant AECOM USA, Inc.[1] ("AECOM"), by and through its attorneys, Seyfarth Shaw LLP, respectfully submits this memorandum of law in support of its motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff Jeffrey Parker's Complaint ("Compl.") for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Plaintiff, a Caucasian male, claims that he suffered "association" discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Connecticut Fair Employment Practices Act ("CFEPA") as a result of his romantic relationship with Tamika Lyons, an African-American subordinate who eventually became Plaintiff's fiancé. (Compl. ¶¶126-148.[2]) Plaintiff further alleges claims of intentional and negligent infliction of emotional distress. (Compl. ¶¶149-154.) Plaintiff's Complaint fails as a matter of law because, notwithstanding an extraordinary thirty-six pages and 155 paragraphs copied entirely from his fiancé's separate Complaint of sex and race discrimination, the Complaint fails to allege even a single fact (as opposed to conclusory statements) suggesting that his termination had anything to do with his relationship with Ms. Lyons or their respective races. To the contrary, the few factual allegations relating to Plaintiff actually contradict his hastily composed "association" theory, establishing that he received a promotion after his relationship with Ms. Lyons began and was common knowledge. Indeed, other than alleging that he is Caucasian and that his fiancé was African American, Plaintiff relies on nothing more than wholly inadequate conclusory allegations that his termination was because of his relationship with Ms. Lyons.

---

[1] Pursuant to the Stipulation and Order of Dismissal and Substitution of Parties ("Stipulation and Order") dated August 17, 2009 and Ordered by the Court on August 20, 2009 (see Docket Entry Nos. 10 and 17), Metcalf & Eddy, Inc. and AECOM Technology Corp. are no longer parties to this action, and AECOM USA, Inc. is the remaining defendant in this case. Pursuant to the Stipulation and Order, the caption has been amended to reflect the current parties, and all references are to AECOM USA, Inc. as the sole defendant.

[2] A copy of the Complaint is attached as Exhibit A to the Declaration of Dov Kesselman accompanying this motion.

2

In truth, the lack of any allegations specific to Plaintiff is not surprising — Plaintiff's Complaint is nothing more than a "cut and paste" of his fiancé's own baseless discrimination Complaint filed in another jurisdiction.  Plaintiff replicates Ms. Lyons' Complaint in its entirety by merely copying her allegations and adding a few conclusory statements that their relationship was the reason for his termination, in the apparent hope that he can somehow manufacture a claim for himself.  As the Supreme Court in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) and the courts of this District have made clear, however, in order to survive a motion to dismiss, simple "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice", and the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" — not merely suggest the "sheer possibility that a defendant has acted unlawfully."  Iqbal, 129 S. Ct. at 1949.  Here, Plaintiff's Complaint does exactly what Iqbal and its progeny have refused to permit — offering conclusory allegations and pleading facts that "are 'merely consistent with' a defendant's liability" but which do nothing to support the plausibility of such a claim.  Because Plaintiff's Complaint is a blatant generic form that fails to allege facts relating to Plaintiff's "association" theory sufficient to state a claim, AECOM respectfully requests that the Complaint be dismissed as a matter of law.

## **FACTUAL BACKGROUND**[3]

Plaintiff began his employment with AECOM as a Staff Engineer in 1989.  (Compl. ¶9.) From approximately October 1998 until September 2007, Plaintiff worked as a Project Manager in the Philadelphia, PA office of AECOM.  (Compl. ¶ 31-32.)  In approximately October 2007, AECOM granted Plaintiff's request for a transfer to the Wallingford, CT office.  (Compl. ¶32.)

---

[3]     Because this is a motion to dismiss, the allegations in the Complaint are assumed, though not conceded, to be true.  AECOM denies, and if necessary will vigorously contest, Plaintiff's allegations.

In December 2007, two months after he transferred to the Wallingford, CT office, Plaintiff became romantically involved with Ms. Tamika Lyons, an African-American female subordinate with whom he had worked while both were in the Philadelphia, PA office.  (Compl. ¶¶43, 41.)   Plaintiff's Complaint acknowledges that AECOM was well aware of their relationship at all times.  (Id. ¶44.)  Notably, even with its knowledge of Plaintiff's relationship with Ms. Lyons, on or about January 21, 2008, M&E promoted Plaintiff to an Associate-level position and named him Business Unit Leader for the Wallingford office.  (Id.. ¶36.)

After Plaintiff transferred to the Wallingford, CT office, Ms. Lyons continued to work for AECOM in Philadelphia.   (Compl. ¶¶41-42.)   In approximately February 2008, Lyons complained to Human Resources that she was not being paid as much as her white male coworkers.  (Compl. ¶¶47, 50.)  Human Resources investigated her complaint and informed Ms. Lyons that the three coworkers she had identified in the Philadelphia office were paid more because they were Level II Project Engineers, while Ms. Lyons was only a Level I Project Engineer, and she was further informed that in order to be promoted to a Level II Project Engineer, she must have a Master's Degree in the relevant field.  (Compl. ¶51-56.)  Ms. Lyons — not Plaintiff — pursued her concerns with Human Resources and her management.  (Compl. ¶¶51-61, 99-100.)  Notably, while Plaintiff attempts to manufacture an association claim based upon his and Ms. Lyons' race, the Complaint clearly illustrates that Ms. Lyons' complaints about her compensation did not relate to her race, but instead were limited to her gender.  See Compl. ¶100 ("In one e-mail to Mr. Ward regarding the request for an intercompany transfer . . . the Plaintiff memorialized the fact that she had made complaints to Karl Brazauskas and Gretchen Sullivan concerning her feeling uncomfortable as a woman within the company. . . Specifically,

4

[Lyons] stated, 'Now that I have voiced my concern that <u>women might potentially be treated differently than men</u> within M&E, I feel like I am being pushed out. . .'").

On March 8, 2008, Plaintiff and Ms. Lyons became engaged (Compl. ¶62), and like their courtship, they made their engagement known to AECOM.  (Compl. ¶44.)  At that point, Ms. Lyons requested a transfer to the Wallingford, CT office where Plaintiff was employed.  (Compl. ¶68.)  AECOM declined Ms. Lyons' request to transfer to the Wallingford, CT office because, as was explained to her by Human Resources, AECOM did not permit couples who reported to one another to work in the same office.  (Compl. ¶¶73-75.)  Indeed, the Complaint quotes a portion of AECOM's employee manual, which provides that "The Company, in its sole discretion, will make all decisions regarding the hiring and placement of relatives."  (Compl. ¶76.)  The employee manual also states on the very same page, in the very same section (though curiously not quoted in the Complaint), AECOM's rather unsurprising policy that relatives may be employed by the Company "provided one relative has no direct or indirect management authority of the other relative."  (Declaration of Gretchen Sullivan, dated August 26, 2009 ("Sullivan Decl."), Exh. A, at p. 44.)[4]  As the Complaint acknowledges, Plaintiff was the Business Unit Leader for the Wallingford, CT office (Compl. ¶36), was responsible for the hiring of his reports (Compl. ¶ 64), and in such role would have plainly had "direct or indirect management authority over Ms. Lyons' work.[5]  In any event, while AECOM advised Ms. Lyons that she could not be transferred to the same office as Plaintiff, Ms. Lyons was granted a raise and was reassured that

---

[4]      In its review of a motion to dismiss, the Court may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken."  <u>Samuels v. Air Transp. Local 504</u>, 992 F.2d 12, 15 (2d Cir. 1993).   AECOM's employee handbook is referenced in the Complaint at Paragraph 76.

[5]      Notably, while the Complaint alleges the names of other relatives who allegedly worked in the same office, it does not allege — because it cannot — that any had "direct or indirect management authority over the other relative."  (<u>See</u> Compl. ¶75.)

5

her employment with the Company in the Philadelphia office where she had been working for the past four years was secure.  (Compl. ¶¶ 71, 39-40.)

Importantly, the Complaint does not allege that Plaintiff involved himself in any of the discussions with management about Ms. Lyons' alleged complaints (Compl., ¶¶ 51-61, 99-100), nor allege that anyone negatively commented to him about his relationship with Ms. Lyons both while they were dating, after their engagement, or after Ms. Lyons became pregnant.  (Compl., *passim*.)

On or about June 20, 2008, AECOM terminated Plaintiff's employment.  (Compl. ¶36.) On September 10, 2008, Plaintiff filed a Charge of Discrimination with the Boston Area Office of the Equal Employment Opportunity Commission ("EEOC").  On April 23, 2009, the EEOC issued a Notice of Right to Sue.  (Compl. ¶¶2, 6.)  On July 2, 2009, Ms. Lyons filed a Complaint alleging discrimination, harassment, and retaliation on the basis of her race and sex in the Eastern District of Pennsylvania.  (Declaration of Dov Kesselman, dated August 27, 2009 ("Kesselman Decl."), ¶ 3 and Exh. B.)[6]   One week later, on July 9, 2009, Plaintiff filed the instant Complaint, which duplicates almost exactly and in its entirety the allegations in Ms. Lyons' Complaint.  (Compl. *passim*.)

## ARGUMENT

I.   **PLAINTIFF'S CLAIMS OF DISCRIMINATION AND RETALIATION MUST BE DISMISSED BECAUSE HE FAILS TO ALLEGE FACTS SUFFICIENT TO ESTABLISH A PLAUSIBLE CLAIM.**

A.   **Plaintiff's Conclusory Allegations Do Not Approach the Required Standard.**

It has long been the pleading standard, even prior to the Supreme Court's affirmance of the Second Circuit's decision in Iqbal, that in order to survive a motion to dismiss, a plaintiff

---

[6]      As noted above, the Court may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels, 992 F.2d at 15.  Ms. Lyons' Complaint is a matter of judicial notice and is referenced in paragraph 124 of the Complaint.

must allege factual allegations, rather than conclusory assertions, sufficient to state a claim.  Fed. R. Civ. P. 12(b)(6).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65.   The Supreme Court in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), recently made explicit that upon a motion to dismiss, the Court should first "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, *they must be supported by factual allegations*." Id. at 1940. (emphasis added).  As such, "naked assertions devoid of further factual enhancement" — such as those that riddle Plaintiff's Complaint with respect to his "association" claims here — will not do.  Logan v. SecTek, Inc., No. 08-00209, 2009 WL 1955441, *2 (D.Conn. Jul. 8, 2009) (granting motion to dismiss discrimination claims based upon Iqbal).

Rather, under the recently clarified "plausibility" standard, Plaintiff bears the obligation of pleading specific facts that could ground a viable discrimination claim.  Baptista v. Hartford Bd. of Educ., No. 08-1890, 2009 WL 2163133, *4 (D. Conn. Jul. 21, 2009) (dismissing discrimination claim where plaintiff failed to plead sufficient facts, and citing Iqbal, 129 S.Ct. at 1950); Ruggiero v. Yale University, Civ. No. 3:06-cv-1165 (WWE), 2007 WL 2684631 (D. Conn. Sept. 10, 2007) ("A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.").  Stated differently, the "[f]actual allegations must be enough to raise a right to relief above the speculative level", such that the factual allegations — accepting them as true — render a claim of discrimination beyond being merely "conceivable", and instead render the claim "plausible."

Iqbal. at 1951, 1974; Bansavich v. McLane Company, Inc., Civ. No. 3:07-cv-702, 2008 WL 4821320 *2 (WWE) (D. Conn. Oct. 31, 2008) (granting motion to dismiss, and holding that "the complaint must contain the grounds upon which the claim rests through factual allegations sufficient to raise a right to relief above the speculative level") (internal quotations omitted).

### B.     Plaintiff Fails to State a Claim for Race Discrimination (Counts I, III).

Plaintiff's claim of race discrimination based upon his association with his fiancé fails for precisely the reasons articulated by the Supreme Court in Iqbal and Twombly.  As noted above, Plaintiff's Complaint is nothing more than a "cut and paste" of Ms. Lyons' separate Complaint, in which she alleges that she was subjected to sex and race discrimination in her compensation, promotions, and ultimately, in her termination.  (Cf. Compl., *passim*, with Kesselman Decl., Exh. B (Ms. Lyons' Complaint), *passim*.)  However, when it comes to allegations with respect to how Plaintiff was allegedly subjected to discrimination on the basis of his "association" with Ms. Lyons, the Complaint contains not a single factual allegation beyond his conclusory allegations, mechanically repeated over and over, that his termination was "based on his association with Ms. Lyons" — without any facts upon which that theory is based  (See e.g. Compl. ¶¶ 17-23, 102, 109, 115-118, 127 (repeatedly asserting in conclusory manner that his termination was "based on his association with Ms. Lyons".))  Plaintiff's attempt to manufacture a race discrimination claim for himself based upon conclusory allegations of association discrimination is precisely the type of pleading that the Supreme Court has expressly rejected, and compels the dismissal of his claims.  See Iqbal, 129 S.Ct. at 1950-51; South Cherry Street, LLC v. Hennessee Group LLC, No. 07-3658, 2009 WL 2032133 (2d Cir. Jul. 14, 2009) (quoting Iqbal, 129 S.Ct. at 1949) (complaint's request for relief must be "plausible [not merely conceivable] on its face"); Logan, 2009 WL 1955441, *2 (quoting Iqbal, 129 S.Ct. at 1950) ("naked assertions devoid of further factual enhancement" will not suffice to survive a motion to dismiss).

Indeed, setting aside his conclusory allegations of associational discrimination, the Complaint offers no factual allegations of any negative conduct toward him as a result of his relationship with Ms. Lyons. To the contrary, Plaintiff's few <u>factual</u> allegations relating to himself negates any "association" theory. For example, the Complaint makes clear that more than a month <u>after</u> Plaintiff and Ms. Lyons made their relationship known to AECOM in December 2007 (Compl. ¶¶43-44), AECOM <u>promoted</u> Plaintiff to Associate and named him Business Unit Leader of the Wallingford, CT office. (Compl. ¶36). Similarly, with respect to Ms. Lyons, Plaintiff's Complaint acknowledges that AECOM awarded her a salary raise during the week of March 31, 2008 – just two weeks <u>after</u> Plaintiff and Ms. Lyons had become engaged and AECOM was made aware of their engagement. (Compl. ¶¶62, 44, 70-71.) Thus, the Complaint's factual allegations make clear that notwithstanding AECOM's knowledge of their relationship, Plaintiff's "association" with Ms. Lyons was not viewed negatively, did not have a negative impact on his career, and belies Plaintiff's conclusory suggestion that AECOM acted "because of his association with Ms. Lyons." <u>See</u> <u>e.g.</u>, <u>Suntoke v. PSEG Power Connecticut, LLC</u>, No. 06-1520, 2009 WL 413130, *7 (D. Conn. 2009) (favorable treatment of plaintiff undercut discrimination claim and "could hardly be seen as evidence of racial animus"); <u>Shah v. James P. Purcell Associates, Inc.</u>, No. 05-00306, 2007 WL 1630311, *6 (D. Conn. 2007) (discrimination claims undercut by plaintiff's promotion); <u>Figueroa v. New York Health & Hosp. Corp.</u>, 500 F. Supp. 2d 224, 236 (S.D.N.Y. 2007) (positive actions towards plaintiff undercut any conclusory suggestion of discrimination); <u>Crawford-Mulley v. Corning Inc.</u>, 194 F. Supp. 2d 212, 221 (W.D.N.Y. 2002) (allegation of discriminatory animus undercut by company's favorable actions towards employee), <u>aff'd</u>, 2003 U.S. App. LEXIS 739 (2d Cir. Jan. 17, 2003).

Similarly, as noted above, AECOM had known about Plaintiff's relationship with Ms. Lyons for at least six months prior to his termination (Compl. ¶¶43-44), and had in the meantime, promoted Plaintiff notwithstanding that relationship.  The passage of more than six months between the time Plaintiff announced his relationship with Ms. Lyons in December 2007 and his termination in June 2008 further belies any plausible allegation of "associational race discrimination".   See e.g., Joiner v. Chartwells and Compass Group North America, 500 F.Supp.2d 75, 85 (D. Conn. 2007) (more than five month gap between employee's filing of complaint and adverse action did not warrant inference of causation); Koschoff v. Henderson, 1999 WL 907546, at *16 (E.D. Pa. 1999) (four months between protected issue and alleged employer reprisal precludes inference of causation); Sgarlata v. Viacom Inc., No. 02-Civ-7234, 2005 WL 659198 *7 (S.D.N.Y. Mar. 22, 2005) (eight months time lapse between filing of complaint and discharge fails to indicate retaliation); Nicastro v. Runyon, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) (gaps of three months between the activity and alleged discriminatory act are "routinely dismissed").   At bottom, notwithstanding Plaintiff's conclusory allegations that his June 20, 2008 termination was "due to his association with Tamika Lyons, a black, American female" (Compl. ¶102), the Complaint offers no facts underlying this leap.[7]

Finally, while the Complaint alleges that Ms. Lyons was not permitted to transfer to his office — where she would be reporting directly to him as the Business Unit Leader (Compl. ¶¶36, 64) — his own factual allegations show that this decision does not even remotely render

---

[7]     Plaintiff's attempt to claim race discrimination is further belied by the Complaint's factual allegations that Ms. Lyons' complaints to AECOM during her employment related exclusively to her sex, not her race.  (See Compl. ¶100 ("I have voiced my concern that women might potentially be treated differently than men within M&E").)  Similarly, the Complaint alleges that Ms. Lyons contacted AECOM's Ethics and Compliance Hotline and filed a complaint.  (Compl. ¶78.)  That Complaint too was based solely on her gender, not her race.  (See Ethics and Compliance Hotline Complaint Form, Number 805133986, attached as Sullivan Decl., Exh. B ("Lyons feels . . .she is being discriminated against because she is a female" (emphasis added)).)  As noted above, the Court may consider this document on a motion to dismiss as part of "the facts alleged in the pleadings, documents . . . incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels, 992 F.2d at 15.

"plausible" his claim of association discrimination required to survive a motion to dismiss.[8]
Indeed, the Complaint's own allegations refer to AECOM's employee manual (though
disingenuously quoting only one portion of the policy (Compl. ¶76)), which explicitly states:
"Employment of Relatives: A candidate for employment who has a relative employed by the
Company may be hired provided one relative has no direct or indirect management authority
over the other relative." (Sullivan Decl., Exh. A, p. 44.[9]) AECOM's conflicts of interest policy
also prohibits "any personal relationships, activities, or financial affairs that may influence any
business decisions." (Id., pp. 19-20.)

As the Complaint makes clear, Plaintiff was the Business Unit Leader for the Wallingford
office (Compl. ¶36), was involved in the hiring decisions for that office (Compl. ¶64) and would
inevitably supervise those new hires, and Ms. Lyons was specifically told by Human Resources
that the reason her transfer request was denied was because AECOM did not permit couples who
reported to one another to work in the same office. (Compl. ¶¶73-75.) Notably, while Plaintiff
alleges that there were other couples who worked in the same office, he does not allege —
because he cannot — that any of those couples or relationships involved any "direct or indirect
management authority over the other". Indeed, as the court held in Iqbal after reviewing similar
factual allegations that could speculatively suggest discrimination: "Taken as true, these
allegations are consistent with petitioners' purposefully designating detainees 'of high interest'
because of their race, religion, or national origin. But given more likely explanations, they do not
plausibly establish this purpose . . . As between that 'obvious alternative explanation' for the

---

[8]      Notably, the factual allegations relating to Ms. Lyons' transfer request are not alleged to have had any
impact on Plaintiff's employment or termination. (See Compl. ¶¶63-76). Plaintiff's inclusion of these paragraphs in
his Complaint is further evidence of his "cut and paste" approach. The facts, however, serve to show the utterly
speculative nature of the Complaint's other allegations.

[9]      Plaintiff incorporates AECOM's Employee Handbook by reference in the Complaint at Paragraphs 66, 67,
and 76, and it may therefore be considered on a motion to dismiss. Samuels, 992 F.2d at 15.

arrests, *Twombly, supra,* at 567, and the purposeful, invidious discrimination respondent asks us to infer, <u>discrimination is not a plausible conclusion</u>."  <u>Iqbal</u>, 129  S. Ct. at 1951-52 (emphasis added).   As such, these allegations too fail to allege a "plausible" basis for association discrimination sufficient to push his claim of race discrimination across the line from "conceivable" to "plausible".  <u>Baptista</u>, 2009 WL 2163133, *4.

At bottom, Plaintiff's Complaint offers no facts to support his theory that his termination was because of his association with Ms. Lyons, nor does his mechanical insertion of conclusory allegations of association discrimination suffice to state a claim.  As the Supreme Court has made clear, such "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." <u>Iqbal</u>, 129 S.Ct. at 1949.  Having failed to do more than recite the elements of a discrimination claim, Counts I and III must be dismissed as a matter of law.

### C.      Plaintiff Fails to State a Claim for Retaliation (Counts II, III).

Plaintiff additionally alleges that his termination was retaliatory "because the Plaintiff was/is associated with Ms. Lyons and she engaged in prior protected employee activity." (Compl. ¶134.)   To be clear, Plaintiff does not claim that he was involved in Ms. Lyons' complaints in any way, or that he asserted any complaints on his own or on behalf of Ms. Lyons, or even that he was otherwise retaliated against by reason of his own action or involvement in Ms. Lyons' complaint.  (Compl. ¶¶47-61, 99-100, *passim*.)

Plaintiff's retaliation claim fails for two separate reasons.  First, as with Plaintiff's discrimination claim, the Complaint offers <u>no</u> factual allegations rendering his theory that his termination was related to Ms. Lyons' complaint plausible.  Second, this District and the Circuit Courts have repeatedly held, as recently as in the last three months, that a claim of third-party retaliation such as that asserted by Plaintiff will not lie as a matter of law, even if Plaintiff had alleged facts regarding his association claim.

1.      **Plaintiff's Reliance on Conclusory Allegations, Rather Than Facts, Compels Dismissal of His Retaliation Claims As a Matter of Law.**

As noted above, Plaintiff's retaliation claims must be dismissed for the same reasons as his discrimination claim because the Complaint alleges <u>no</u> facts nor anything beyond conclusory assertions and rank speculation to suggest that Plaintiff's termination had anything to do with Ms. Lyons' complaints.  In fact, Plaintiff fails to identify a single conversation, remark, or e-mail that suggests any connection between Ms. Lyons' complaint in February 2008 and Plaintiff's termination in June 2008, nearly four months later.  (<u>See</u> Compl. ¶¶47, 37.)  Indeed, apart from the lack of factual allegations supporting such a claim, this gap in time <u>by itself</u> makes clear the lack of any "plausible" allegation of retaliation.  <u>See</u> <u>Joiner</u>, 500 F. Supp. 2d at 75 (more than five month gap between employee's filing of complaint and adverse action did not warrant inference of causation); <u>Koschoff</u>, 1999 WL 907546, at *16 ("[I]f at least four months pass after the protected action, without employer reprisal, there is no inference of causation"); <u>Sgarlata</u>, 2005 WL 659198 *7 (eight months time lapse between filing of complaint and discharge fails to indicate retaliation); <u>Nicastro</u>, 60 F. Supp. 2d at 185 ("Claims of retaliation are routinely dismissed when as few as three months elapse between the [protected] activity and the alleged act of retaliation").  And, as also noted above, the Complaint acknowledges that even with respect to Ms. Lyons, AECOM awarded her a salary increase in late-March 2008 – at least one month <u>after</u> she filed a complaint (Compl. ¶¶ 70-71, 47), further precluding Plaintiff's conclusory allegations of retaliation.  <u>Suntoke</u>, 2009 WL 413130, *7; <u>Shah</u>, 2007 WL 1630311, *6; <u>Figueroa</u>, 500 F. Supp. 2d at 236;  <u>Crawford-Mulley</u>, 194 F. Supp. 2d at 221.

At bottom, the Complaint offers no facts that Plaintiff's termination was "because of his association" with Ms. Lyons' complaint, and his conclusory allegations cannot move his claim "across the line from conceivable to plausible." <u>Iqbal</u>, 129  S. Ct. at 1950-51; <u>Twombly</u>, 127 S.

Ct. at 1964-65; <u>Logan</u>, 2009 WL 1955441, *2.  As such, Plaintiff's retaliation claims — like his discrimination claims — must be dismissed at the very outset as a matter of law.

**2.      Plaintiff's Claim of Third-Party Retaliation
<u>Does Not State A Cognizable Cause of Action.</u>**

In addition to the Complaint's failure to even minimally meet the <u>Iqbal</u> "plausibility" standard, Plaintiff's retaliation claim fails for the second reason that this District, as well as every Circuit Court to have addressed the issue, have refused to permit retaliation claims brought by a third-party who, as in the case at bar, did not themselves engage in protected activity or participate in any protected investigation.  Indeed, in <u>Mutts v. Southern Connecticut State University</u>, Civ. No. 3:04-cv-1746 (MRK), 2006 WL 1806179 (D. Conn. June 28, 2006), this Court addressed precisely the situation presented here.  There, the plaintiff's husband had filed a claim of discrimination against their shared employer, and the plaintiff alleged that her subsequent termination was in retaliation for her association with her husband (the complainant). <u>Mutts</u>, 2006 WL 1806179, at *8.  In reviewing the Circuit court decisions, the District Court correctly noted that the Fifth, Third, and Eighth Circuits were then the only Circuits to have addressed the question directly, and that all three had concluded that such "'third party retaliation claims' are not cognizable." <u>Id.</u>  In reaching its decision, the Court looked to the plain language of Title VII's retaliation section, which states:

> "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... <u>because he has opposed any practice</u> made an unlawful employment practice by this subchapter, <u>or because he has made a charge, testified, assisted, or participated in any manner</u> in an investigation, proceeding or hearing under this subchapter."

42 U.S.C. § 2000e-3(a) (emphasis added).[10]

---

[10]      The Connecticut Fair Employment Practices Act, Conn. Gen Stat. §46a-60(4), under which Plaintiff also makes a claim in this case, is identical to that of Title VII, and states: ""It shall be a discriminatory practice . . . [f]or any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate

NY1 26582857.3

The District Court of Connecticut, relying on the Third Circuit decision in <u>Fogleman v. Mercy Hosp. Inc.</u>, 283 F.3d 561 (3d Cir. 2002) and others, concluded that the "statute's plain meaning" precluded a retaliation claim by the spouse (or fiancé) of a complainant (or anyone else other than the complainant or someone who had participated in an investigation of the complaint), noting the "obvious reason for Congress to have chosen to limit protection to those third parties who actually assist or participate in a Title VII proceeding, namely 'fear[] that expanding the class of potential anti-discrimination plaintiffs . . . to include anyone whose friends or relatives have engaged in protected activity would open the door to frivolous lawsuits.'" <u>Mutts</u>, 2006 WL 1806179, *10-11. Thus, the Court dismissed the retaliation claim, finding that "since Mrs. Mutt's retaliation claim is based entirely upon the protected activity of her husband and not her own protected activity, she has failed to make out her *prima facie* case." <u>Id.</u>, <u>aff'd</u> on other grounds, 242 Fed. Appx. 725, 727 (2d Cir. June 15, 2007) ("This Circuit has not yet decided whether third party retaliation claims are cognizable under Title VII. We need not reach the issue, however, because even if such a cause of action might exist, Mutts has not adduced sufficient facts to establish a prima facie case of retaliation").[11]

Since the District of Connecticut's decision in <u>Mutts</u>, the Sixth Circuit weighed in on this issue just three months ago, and agreed with the Court's decision in <u>Mutts</u>, and the decisions of the Third, Fifth, and Eighth Circuits, holding that Title VII does not create a cause of action for third-party retaliation for persons who have not personally engaged in protected activity. <u>Thompson v. North American Stainless, LP</u>, 567 F.3d 804, 805-806 (6th Cir. June 5, 2009)

---

against any person because <u>such person has opposed any discriminatory employment practice</u> or because <u>such person has filed a complaint or testified or assisted in any proceeding</u> under [this] section." (emphasis added).

[11]     As noted in Section 1 above, and as in <u>Mutts</u>, Plaintiff's Complaint fails to allege facts sufficient to plausibly establish a retaliation case, such that Plaintiff's Complaint must be dismissed on that basis alone.

In <u>Thompson</u>, a former employee brought claims for retaliation after his wife (whom he met and began dating on the job) filed a charge of discrimination with the EEOC alleging that her supervisors had discriminated against her because of her gender.  <u>Id.</u> at 806.  Less than one month after his wife filed the Charge at the EEOC, the plaintiff was terminated.  <u>Id.</u>  At the time of his termination, the couple was engaged to be married and their relationship was "common knowledge" at the company.  <u>Id.</u>  The employer moved for summary judgment, contending that the plaintiff's claim that his "relationship [with his wife] was the sole motivating factor in his termination," was insufficient as a matter of law to support a cause of action under Title VII.  <u>Id.</u>  The district court granted the defendant's motion, holding that the plaintiff failed to state a claim under either the anti-discrimination provision contained in 42 U.S.C. § 2000e-2(a) or the anti-retaliation provision set forth in 42 U.S.C. § 2000e-3(a).  The plaintiff appealed as to the latter claim.  <u>Id.</u>

The Sixth Circuit affirmed the district court's decision and "joined the Third, Fifth, and Eighth Circuit Courts of Appeal" (as well as the District of Connecticut) in holding that the plain meaning of Title VII does not protect third-party plaintiffs who merely "associate with" a complaining party but do not <u>personally engage</u> in protected activity.  <u>Id.</u>; <u>see</u> <u>also</u> <u>Holt v. JTM Industries</u>, 89 F.3d 1224 (5th Cir. 1996) (no third-party retaliation claim for husband fired after wife filed age discrimination claim against joint employer, where husband did not participate in protected activity.); <u>Smith v. Riceland Foods Inc.</u>, 151 F.3d 813 (8th Cir. 1998) (no protection for male employee whose "significant other" and live-in girlfriend filed discrimination claim against joint employer, where male employee did not engage in protected activity); <u>Fogleman</u>, 283 F.3d 561 (3d Cir. 2002) (no third-party retaliation claim based on association of son fired

after father filed discrimination claims against joint employer, where son did not engage in protected activity).

Here, Plaintiff's Complaint readily alleges that it was <u>only</u> Ms. Lyons who engaged in protected activity (Compl. ¶¶51-61, 99-100), nor does it allege that Plaintiff participated in Ms. Lyons' complaint or that he engaged in any protected activity on her behalf.  (Compl., *passim*.) To the contrary, the Complaint makes clear that his claim is based solely on his association with Ms. Lyons and her protected activity.  (Compl. ¶ 134.)  As such, Plaintiff's claim for retaliation fails as a matter of law, and must be dismissed for this reason as well.

## II.     PLAINTIFF'S     INTENTIONAL     AND     NEGLIGENT     INFLICTION     OF EMOTIONAL DISTRESS CLAIMS (COUNT IV) MUST BE DISMISSED.

### A.     Plaintiff Cannot State a Plausible Claim for Intentional Infliction of Emotional Distress.

In order to state a claim for intentional infliction of emotional distress, Plaintiff must adequately allege: (1) that AECOM intended to inflict emotional distress or that it knew or should have known that emotional distress was the likely result of its conduct; (2) that the conduct was extreme and outrageous; (3) that AECOM's conduct was the cause of Plaintiff's distress; and (4) that the emotional distress he sustained was severe.  <u>Appleton v. Board of Educ. of the Town of Stonington</u>, 254 Conn. 205, 210 (2000) (internal quotation marks and citations omitted); <u>see also</u> <u>Ruggiero v. Yale University</u>, Civ. No. 3:06-cv-1165 (WWE), 2007 WL 2684631 *3 (D. Conn. Sept. 10, 2007) (granting motion to dismiss claims for intentional and negligent infliction of emotional distress). In order to establish such a claim, the Complaint must allege facts showing conduct "exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." <u>Ancona v. Manafort Bros., Inc.</u>, 56 Conn.App. 701, 712 (2000); <u>see also</u> <u>Ruggiero</u>, 2007 WL 2684631, at *3.

NY1 26582857.3

It is well-settled that ordinary terminations of employment, even if made with improper or unlawful motivations, do not constitute extreme or outrageous behavior.  See Adams v. Hartford Courant, No. 03-0477, 2004 WL 1091728, at *4-*5 (D. Conn. May 14, 2004) (dismissing claim for intentional infliction of emotional distress where plaintiff alleged that she was denied essential training tools, never offered stock options, not promoted, eventually terminated, and generally subjected to insults, because such conduct did not constitute "extreme and outrageous" behavior).  Similarly, in a case involving an employment rejection based upon allegedly discriminatory motivations, this Court held that "while plaintiff's claims that the motive for the rejection was nefarious, such allegations have no bearing on the manner of the rejection itself . . . it is evident that routine conduct may not be considered extreme and outrageous."  Ruggiero, 2007 WL 2684631, at *4 (granting motion to dismiss intentional infliction of emotional distress claim, and citing Miner v. Town of Cheschire, 126 F. Supp. 2d 184, 196 (D. Conn. 2000) ("An employer's adverse yet routine employment action, even if improperly motivated, does not constitute extreme and outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner.")).

Here, Plaintiff has alleged no facts that could plausibly rise to the level of "extreme and outrageous" conduct.  Plaintiff does not offer any factual allegations that his termination was handled in an "egregious and oppressive manner", and his generic allegations (Compl. ¶¶150-154) are insufficient to state a claim for intentional infliction of emotional distress.  See, e.g., Lorenzi v. Connecticut Judicial Branch, 620 F. Supp. 2d 348, 352-353 (D. Conn. 2009) (discriminatory employment actions on the basis of race, national origin, and retaliation, absent egregious and oppressive manner do not meet standard for extreme and outrageous conduct) (internal citations omitted); White v. Martin, 23 F. Supp. 2d 203, 208 (D. Conn. 1998), aff'd, 198

18

F.3d 235 (2d Cir. 1999) (same).  As such, Plaintiff's claim of intentional infliction of emotional distress must be dismissed as a matter of law.  Ruggiero v. Yale University, Civ. No. 3:06-cv-1165 (WWE), 2007 WL 2684631 *3 (D. Conn. Sept. 10, 2007) (granting motion to dismiss claims for intentional infliction of emotional distress).

### B.   Plaintiff Cannot State a Claim for Negligent Infliction of Emotional Distress.

To prevail on his claim for negligent infliction of emotional distress, Plaintiff must show: (1) that AECOM's conduct created an unreasonable risk of emotional distress; (2) his distress was foreseeable; (3) his emotional distress was severe enough that it might result in illness or bodily harm; and (4) AECOM's conduct was the cause of his distress. Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003); see also Buckman v. People Express, Inc., 205 Conn. 166, 173 (1987) (the plaintiff must establish that the defendant "knew or should have known that its conduct involved an unreasonable risk of causing emotional distress, and that the distress, if it were caused, might result in illness or bodily harm.").

As is true in the intentional infliction context, "the mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress." Ruggiero, 2007 WL 2684631, *3 (citing Parsons v. United Technologies Corp., 243 Conn. 66, 88-89 (1997)); Copeland v. Home and Cmty. Health Servs., Inc., 285 F.Supp.2d 144, 152 (D. Conn. 2003).  Rather, "in order to sustain a claim of negligent infliction of emotional distress in the employment context, the alleged conduct must arise during the termination process." Adams v. The Hartford Courant and Tribune Co., No. 03-0477, 2004 WL 1091728, *4 (D. Conn. May 14, 2004).  Further, the unreasonable conduct in the termination process must be "done in an inconsiderate, humiliating or embarrassing manner." Id. (quoting

<u>Schug v. The Pyne-Davidson Co.</u>, Civ. No. 99-1493, 2001 U.S. Dist. Lexis 21246, at *24-25 (D. Conn. Dec. 10, 2001).

Therefore, in order for a negligent infliction of emotional distress claim to survive a 12(b)(6) motion to dismiss, the Complaint must allege facts that, taken as true, "(1) his employer engaged in unreasonable conduct, that is, conduct that was 'inconsiderate' or intended to humiliate or embarrass the employee; and, (2) that the conduct was engaged in <u>during the course of the employment termination process</u>." <u>Copeland</u>, 285 F. Supp. 2d at 152-153 (quoting <u>Schug</u>, 2001 U.S. Dist. LEXIS 21246, at *24-25) (emphasis added).

Here, Plaintiff's Complaint does not offer any factual allegations relating to the manner in which the "termination process" took place, does not allege that the process was undertaken in an unreasonable, inconsiderate, humiliating or embarrassing manner, and fails altogether to assert that AECOM knew or should have known that its conduct could cause emotional distress. Instead, the Complaint merely alleges that Plaintiff was wrongfully discharged. (Compl. ¶37.) This allegation is wholly insufficient to sustain a claim for negligent infliction of emotional distress. <u>See</u> <u>Adams</u>, 2004 WL 1091728, *4 (internal citations omitted); <u>Schug</u>, 2001 U.S. Dist. LEXIS 21246 at *25 (holding that termination of employment, even if based on age discrimination, is not sufficient by itself to sustain a claim of negligent infliction of emotional distress). Because Plaintiff has not stated a plausible claim for negligent infliction for emotional distress, this claim too fails as a matter of law. <u>Ruggiero</u>, 2007 WL 2684631 *3 (granting motion to dismiss negligent infliction of emotional distress on same grounds).

## CONCLUSION

For the foregoing reasons, Defendant AECOM USA, Inc. respectfully requests that the Court dismiss the Complaint in its entirety, and award such other and further relief as the Court deems appropriate.

SEYFARTH SHAW LLP

/s/ Dov Kesselman
Dov Kesselman (Federal Bar No. phv03559)
Dana L. Fleming (Federal Bar No. phv03558)
620 Eighth Avenue
New York, NY 10002
Phone:  (212) 218-5500
Fax: (917) 344-1210
dkesselman@seyfarth.com

Two Seaport Lane
Boston, MA 02210
Phone: (617) 946-4987
Fax: (617) 790-6799

Dated: September 3, 2009                      dfleming@seyfarth.com
*Attorneys for Defendant AECOM USA, INC.*

21

CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2009, a copy of foregoing Defendant's Memorandum of Law In Support of Motion to Dismiss was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Dov Kesselman

Dov Kesselman
620 Eighth Avenue
New York, NY 10002
Phone: (212) 218-5500
Fax: (917) 344-1210
dkesselman@seyfarth.com

22