## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEFFREY MARK PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09-cv-01078 (WWE) |
| | ) | |
| AECOM USA, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT
## AECOM USA, INC.'S MOTION TO DISMISS

Dated:  October 7, 2009

*Of Counsel:*

     Dov Kesselman (Federal Bar No. phv03559)
     Dana Fleming (Federal Bar No. phv03558)

SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500

Attorneys for Defendant AECOM USA, Inc.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ...........................................................................................1

I.      PLAINTIFF MISAPPREHENDS THE APPLICABLE PLEADING
        STANDARD .................................................................................................2

II.     PLAINTIFF DOES NOT DISPUTE THAT THERE ARE NO
        ALLEGATIONS RELATING TO HIMSELF, AND FOCUSES
        INSTEAD ON AVOIDING THE COMPLAINT'S OWN
        ALLEGATIONS ABOUT HIS CLAIMS. ....................................................5

III.    PLAINTIFF CANNOT AVOID DISMISSAL BY SUGGESTING THAT
        HE COULD AMEND THE COMPLAINT, AND THEN NOT
        ACTUALLY DO SO. ...................................................................................8

IV.     PLAINTIFF'S THIRD-PARTY RETALIATION CLAIM MUST ALSO
        BE DISMISSED BECAUSE THE CASELAW PRECLUDES SUCH A
        CLAIM. ........................................................................................................8

V.      PLAINTIFF CANNOT STATE A PLAUSIBLE CLAIM FOR
        INTENTIONAL OR NEGLIGENT INFLICTION OF EMOTIONAL
        DISTRESS. ..................................................................................................9

CONCLUSION....................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009) ..................................................................................... *passim*

Aztec Energy Partners, Inc. v. Sensor Switch, Inc.,
    531 F. Supp. 2d 226 (D. Conn. 2007) .................................................................3

Bansavich v. McLane Company, Inc.,
    No. 3:07-cv-702 (WWE), 2008 WL 4821320 (D. Conn. Oct. 31, 2008) .................................7

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) ........................................................................................ *passim*

Crawford v. Metropolitan Government of Nashville,
    129 S. Ct. 846 (2009) .......................................................................................9

Fowler v. UPMC Shadyside,
    2009 U.S. App. LEXIS 18626 (3d Cir. Aug. 18, 2009) .........................................................3

Garel v. City of New York,
    No. 04-cv-3506, 2006 U.S. Dist. LEXIS 76601 (E.D.N.Y. Oct. 23, 2006) .............................9

Lorenzi v. Conn. Judicial Branch,
    620 F. Supp. 2d 348 (D. Conn. 2009) .................................................................9

Miller v. Selsky,
    2000 U.S. App. LEXIS 29697 (2d Cir. 2000) ..........................................................8

Mutts v. Southern Connecticut State University,
    No. 3:04-cv-1746 (MRK), 2006 WL 1806179 (D. Conn. June 28, 2006)........................... 8, 9

Nicastro v. Runyon,
    60 F. Supp. 2b 181, 185 (S.D.N.Y. 1999)...............................................................7

Parsons v. United Techs. Co.,
    243 Conn. 66 (1997) .......................................................................................10

Ruggiero v. Yale University,
    No. 3:06-cv-1165 (WWE), 2007 WL 2684631 (D. Conn. Sept. 10, 2007)............................10

Swierkiewicz v. Sorema,
    534 U.S. 506 (2002)........................................................................................ *passim*

White v. Martin,
    23 F. Supp. 2d 203 (D. Conn. 1998)....................................................................9

Defendant AECOM USA, Inc. ("AECOM") respectfully submits this reply memorandum of law in further support of its motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## PRELIMINARY STATEMENT

Plaintiff's opposition papers make clear that his Complaint must be dismissed.  First, Plaintiff dramatically misapprehends the pleading standard set forth by the Supreme Court in Iqbal and Twombly – so much so that Plaintiff actually argues that a complaint "does not need to contain specific facts" and relying on Swierkiewicz v. Sorema (Pl. Mem. at 5) – even though the District of Connecticut and the Circuit Courts have explicitly found that Twombly repudiated that standard.  (See infra at 2-3.)  Plaintiff is forced to argue this indefensible position because his Complaint offers no facts personal to him that could render his claim plausible, rather than merely hypothetically possible.[2]  Knowing this, Plaintiff falls back to the position that he should be permitted to file an Amended Complaint rather than have his case dismissed.  Yet, Plaintiff does not submit a proposed Amended Complaint or offer any facts that might legitimately be added to his Complaint.  Accordingly, Plaintiff cannot avoid dismissal on this basis either.

Plaintiff's desperation is evident as well in his attempt to re-characterize his Complaint. Plaintiff first alleged that it was his relationship with Ms. Lyons beginning in December 2007 that prompted his termination, but now argues that what he *really* meant to allege was that it was the announcement of his engagement in March 2008 and/or Ms. Lyons' pregnancy in May 2008 that caused his termination.  (Pl. Mem. at 10-11).  Apparently, Plaintiff now realizes that his earlier allegation dooms his claims because he was in fact promoted in January 2008 after AECOM learned of his relationship with Ms. Lyons.  (Compl. ¶ 44.)  Plaintiff's attempt to shift his allegations to support a theory that is *conceivable* or *possible* is insufficient to meet the

---

[1]    AECOM uses the same abbreviations throughout this reply as in its moving papers.  AECOM's initial Memorandum of Law dated September 3, 2009 will be referred to herein as "Def. Mem.", and Plaintiff's Opposition to Defendant's Motion to Dismiss will be referred to as "Pl. Mem."

[2]    Indeed, Plaintiff devotes entire sections of his opposition to Ms. Lyons' claims (see, e.g., Pl. Mem. at 12-17), but fails to allege that any of the purported discriminatory or retaliatory conduct was ever directed against him.

pleading standard under Iqbal and Twombly – Plaintiff must allege specific facts that render his claim *plausible*. Here, however, Plaintiff has done nothing more than state that he had a relationship with Ms. Lyons, and some time later was fired, *ergo* he was fired because of his relationship with Ms. Lyons. This false syllogism does not render his claim *plausible*, and the Complaint must therefore be dismissed.

Plaintiff also cannot overcome the precedent, including this District's holding in Mutts, compelling the dismissal of his third-party retaliation claim as a matter of law. Instead, Plaintiff relies on *dissenting* opinions whose arguments have already been rejected in every Circuit to have addressed the issue. Moreover, Plaintiff's failure to allege any facts regarding his involvement in Ms. Lyons' complaint further compels the dismissal of his retaliation claim.

Finally, Plaintiff all but abandons his claims of negligent and intentional infliction of emotional distress, as he fails to address the caselaw compelling the dismissal of those claims. For all these reasons, and as set out in more detail below and in AECOM's initial memorandum of law, AECOM respectfully requests that the Court grant its motion to dismiss in its entirety.

## I.  PLAINTIFF MISAPPREHENDS THE APPLICABLE PLEADING STANDARD.

At its core, Plaintiff's opposition simply misstates his burden in stating a claim sufficient to survive a motion to dismiss. Plaintiff argues, relying on Swierkiewicz v. Sorema, 534 U.S. 506 (2002), that "an employment discrimination complaint does not need to contain specific facts establishing the elements of a prima facie case." (Pl. Mem. at 5.) Indeed, Plaintiff goes so far as to assert – without any case law support – that the Supreme Court "affirmed" Swierkiewicz in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and that Swierkiewicz is "still viable" because it is not mentioned in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). (Pl. Mem at 5 n.2.)[3]

---

[3]      Plaintiff restates his incorrect understanding of his pleading obligations throughout his brief.  See e.g., Pl. Mem. at 19 ("a court cannot impose a duty upon a plaintiff to cite specific facts"); Pl. Mem. at 22 (relying on Swierkiewicz).

Plaintiff's argument is simply wrong; this District recognized the implied overruling of Swierkiewicz after the Supreme Court's decision in Twombly, and the value of this precedent was further eroded by the Supreme Court's decision in Iqbal. See, e.g., Aztec Energy Partners, Inc. v. Sensor Switch, Inc., 531 F. Supp. 2d 226, 228 (D. Conn. 2007) ("[T]he long-standing principle recently restated in Swierkiewicz, that a court should not dismiss a complaint for failure to state a claim 'unless it appears beyond doubt that plaintiff can prove no set of facts in support of his or her claim which would entitle the plaintiff to relief,' is no longer the appropriate standard."). As recently as two months ago (a month before Plaintiff's opposition), the Third Circuit also acknowledged the "demise of Swierkiewicz." See Fowler v. UPMC Shadyside, 2009 U.S. App. LEXIS 18626, at *18 (3d Cir. Aug. 18, 2009) ("Swierkiewicz expressly adhered to Conley's then-prevailing 'no set of facts' standard and held that the complaint did not have to satisfy a heightened standard of pleading. . . . [w]e have to conclude, therefore, that because Conley has been specifically repudiated by both Twombly and Iqbal, so too has Swierkiewicz, at least insofar as it concerns pleading requirements.") (citations omitted).[4]

The Supreme Court's decisions in Iqbal and Twombly, and this District's repeated holdings make clear that the Complaint must allege facts sufficient "to raise a right to relief above the speculative level." (See Def. Mem at 6-8 (citing cases).) Here, Plaintiff's Complaint fails for the very reasons identified in Iqbal, because his conclusory allegations that he was discharged and retaliated against for associating with Ms. Lyons are not entitled to any weight and cannot be considered on a motion to dismiss. Iqbal, 129 S. Ct. at 1951.

---

[4]    Plaintiff similarly spends nearly five pages of misguided discussion about the standards of "direct" and "circumstantial" evidence at the pleading stage (Pl. Mem. at 18-22). As the Iqbal court makes clear, however, while Plaintiff need not offer evidence to support his claims, or even allege facts that the Court believes will ultimately win the day, there is indeed a "duty upon a plaintiff to cite specific facts" that render his claim not simply conceivable, but ultimately plausible, and here, Plaintiff has not fulfilled this duty.

In Iqbal, the plaintiff alleged a policy of discrimination against Arab Muslims in the wake of the September 11, 2001 attacks.  Id. at 1951.  Specifically, the plaintiff alleged that federal officials "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin."  Id.  The Supreme Court rejected this "formulaic recitation of the elements" because, under the plausibility standard announced in Twombly, such conclusory allegations are "not entitled to be assumed true" and must be disregarded on a motion to dismiss.  Id. at 1951 (quoting Twombly at 554-55).  As the Court explained:

> To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical. We do not so characterize them any more than the Court in Twombly rejected the plaintiffs' express allegation of a "contract, combination or conspiracy to prevent competitive entry," because it thought that claim too chimerical to be maintained. It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.

Id. (citation omitted).

The Iqbal Court next turned to the complaint's remaining factual allegations to determine if they plausibly suggested an entitlement to relief.  Iqbal, 129 S. Ct. at 1951.  In doing so, the Court credited as true the factual allegation that the FBI detained thousands of Arab Muslim men after September 11.  Importantly, however, the Court found that although these facts were "consistent" with plaintiff's claim that officials had detained people based on their race, religion, or national origin, because there were other possible or likely explanations (namely, the threat of another terrorist attack), the Court found that the factual allegations of the complaint did not plausibly establish a discrimination claim.  Id.  In sum, the Iqbal complaint alleged nothing more than the following tautology: thousands of Arab Muslim men were arrested and detained after September 11, *ergo*, federal officials had a policy of discriminating against Arab Muslims.  This, the Iqbal Court held, does not create a plausible claim of discrimination.

4

Plaintiff's Complaint suffers from the same faulty logic: Plaintiff argues that he was terminated after he began associating with Ms. Lyons, *ergo*, AECOM discriminated and retaliated against him <u>because</u> he was associating with Ms. Lyons.  Setting aside the Complaint's allegations that refute Plaintiff's own theory,[5] Plaintiff's Complaint simply does not offer any facts that suffice to move his claim "across the line from conceivable to plausible."  <u>Twombly</u>, 550 U.S. at 570.[6]

## II.   PLAINTIFF DOES NOT DISPUTE THAT THERE ARE NO ALLEGATIONS RELATING TO HIMSELF, AND FOCUSES INSTEAD ON AVOIDING THE COMPLAINT'S OWN ALLEGATIONS ABOUT HIS CLAIMS.

As noted by AECOM in its initial moving papers, Plaintiff did nothing more than "cut and paste" Ms. Lyons' earlier-filed Complaint and add a number of conclusory allegations of "associational discrimination."  It is not surprising therefore, that the Complaint contains no allegations relating to any comments or meetings with Plaintiff regarding his relationship with Ms. Lyons (there were none), any complaints by Plaintiff regarding his treatment or the treatment of Ms. Lyons (there were none), nor any facts that could connect his termination to his relationship with Ms. Lyons (there were none).  (<u>See</u> Compl. *passim*).[7]  In fact, the <u>only</u> factual

---

[5]      These allegations include that Plaintiff was actually promoted <u>after</u> his relationship with Ms. Lyons began (<u>see</u> Def. Mem. at 9-13), that Plaintiff's employment was not terminated until more than six months <u>after</u> AECOM knew of the relationship, that there are <u>no</u> allegations of any negative comments or conduct relating to their relationship, and that there is a far more likely explanation for Ms. Lyons not being permitted to transfer to Plaintiff's office, <u>i.e.</u>, AECOM's documented policy of not permitting couples to report to one another (<u>see</u> Def. Mem. at 10-12).

[6]      Plaintiff's conclusory pleading also purposefully fails to allege many facts concerning Mr. Parker's serious performance problems and complaints from clients following his promotion.  Because this is a motion to dismiss, those facts are not introduced here.  However, there are easily "more likely explanations" for Mr. Parker's termination, and it is precisely for this reason that <u>Iqbal</u> precludes plaintiffs from proceeding with a Complaint based on spurious allegations lacking factual support.  <u>Iqbal</u>, 129 S. Ct. at 1951.

[7]      Plaintiff's Opposition repeatedly attempts to conflate his allegations with those of Ms. Lyons.  This is perhaps most blatant in Plaintiff's argument regarding his retaliation claim, in which he goes so far as to argue that "there was a pattern of antagonistic retaliatory conduct directed <u>at both the Plaintiff and Ms. Lyons for a few months/weeks after the protected activity</u>."  (<u>See</u> Pl. Mem. at 21.)  Yet, Plaintiff does not bother to offer any citations to the Complaint for this extraordinary allegation (<u>id.</u>), and in fact the Complaint makes <u>no</u> such allegations regarding Plaintiff.

As an aside, Plaintiff also spends nearly three pages arguing that Ms. Lyons' internal complaint to the Ethics and Compliance Hotline does not necessarily foreclose her ability to bring a race claim, even though it fails to

allegations that relate to Plaintiff's relationship with Ms. Lyons unequivocally state that "[a]t all relevant times, the Plaintiff and Ms. Lyons notified [AECOM] about their [a] relationship, [b] engagement and [c] the expected arrival of their baby." (Compl. ¶ 44.) The Complaint also specified that Plaintiff and Ms. Lyons (a) began their relationship in December 2007, (b) became engaged in March 2008, and (c) announced Ms. Lyons' pregnancy in May 2008. (Compl. ¶¶ 43, 62, 101.) The Complaint is utterly clear that Plaintiff and Ms. Lyons notified AECOM about their relationship in December 2007, about their engagement in March 2008, and about the expected birth of their interracial baby in May 2008. (See Compl. ¶¶ 43, 44, 62, 101.)

Now, however, Plaintiff seeks to distance himself from this chronology because, as AECOM pointed out in its motion to dismiss, his discrimination and retaliation claims are severely undercut by the timing of Plaintiff's notice to AECOM. (Def. Mem. at 3-6, 9-10, 13.)[8] Plaintiff first attempts to misleadingly blur the distinction between the start of his relationship with Ms. Lyons and their eventual engagement, now pretending that in fact the "relationship" and the "engagement" are one and the same event. See e.g., Pl. Mem. at 11 ("Plaintiff was not treated favorably after his relationship/engagement became known." (emphasis added).) In Plaintiff's desperation to create the appearance of a connection, he repeatedly misstates facts,

---

mention race. (Pl. Mem. at 13-16.) Plaintiff misses the point. AECOM does not dispute that as an African-American female, Ms. Lyons may be able to state a claim for discrimination on the basis of her combined race and gender. (Id.) Plaintiff's "cut and paste" allegations are suspect, however, because they lack any factual allegations relating to himself and because Ms. Lyons did not raise any internal complaint of discrimination on the basis of her relationship with Mr. Parker. Plaintiff's focus on Ms. Lyons' potential claims only emphasizes that the entirety of the Complaint's allegations are about Ms. Lyons, and not Mr. Parker.

[8] First, Plaintiff received a promotion on or about January 21, 2008, less than a month after he notified AECOM about his relationship with Ms. Lyons. (Compl. ¶ 36.) Second, Ms. Lyons received a salary increase during the week of March 31, 2008, just two weeks after Plaintiff and Ms. Lyons notified AECOM about their engagement (Compl. ¶¶ 62, 44, 70-71) — and while Plaintiff urges that AECOM might only have increased Ms. Lyons' salary in response to her complaint of unequal compensation (Pl. Mem. at 12), this again is an argument that focuses on AECOM's dealings with Ms. Lyons rather than with Plaintiff. (Moreover, it is important to note that while Plaintiff attempts to rely on Ms. Lyons' allegations for his complaint, her alleged "unequal compensation" preceded their relationship, and the Complaint makes clear Ms. Lyons' complaint regarding her compensation had nothing to do with their relationship, but instead only her gender and race as compared to those of her colleagues.) Third, Plaintiff was not terminated until June 20, 2008, more than six months after AECOM first learned about his involvement with Ms. Lyons.

such as his attempt to suggest that he was discharged "very shortly after" the announcement of his engagement (Pl. Mem. at 11), which is plainly disingenuous, since the Complaint acknowledges that his engagement occurred on March 8, 2008 and he was not terminated until June 20, 2008 – more than three months later.  (Compl. ¶¶ 62, 102.)  See Nicastro v. Runyon, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) (gaps of three months between the activity and the alleged discriminatory act are "routinely dismissed"); see also Def. Mem. at 10 (citing cases).[9] Similarly, Plaintiff's additional attempt to avoid the timing that defeats his case by trying to shift the focus to Ms. Lyons' pregnancy in May 2008 falls short.  (Pl. Mem at 15.)  First Plaintiff is simply disingenuous in arguing that "he was discharged just days after it was disclosed that he was expecting an interracial baby" (Pl. Mem. at 15), when the Complaint in fact shows that Plaintiff notified AECOM about the pregnancy in "approximately May, 2008" (Compl. ¶ 101) nearly a month before his termination on June 20, 2008.  (Compl. ¶ 102.)  More importantly, Plaintiff does nothing more than to speculate, using the same faulty reasoning rejected by Iqbal.

At bottom, Plaintiff's opposition cannot cure the basic failure of his Complaint: while Plaintiff speculates about whether the existence of their relationship, or their engagement, or their anticipated baby was the reason for his termination – the shifting nature of which  itself evidences the speculative nature of his claims – Plaintiff offers no "factual allegations [that] raise a right to relief above the speculative level" or that move his claims of discrimination beyond being "conceivable" to "plausible."   Iqbal, at 1951, 1974; Bansavich v. McLane Co., No. 3:07-cv-702 (WWE), 2008 WL 4821320, at *2 (D. Conn. Oct. 31, 2008) (granting motion to dismiss, and holding that "[t]he complaint must contain the grounds upon which the claim rests through factual allegations sufficient to raise a right to relief above the speculative level").

---

[9]       Plaintiff also suggests that "temporal proximity of time is not applicable to discrimination claims."  (Pl. Mem. at 13.)  Once again, Plaintiff cites no cases to support this broad assertion or to refute the plain relevance of the timing of decisions Plaintiff conclusorily alleges to be based on discriminatory animus.

**III.    PLAINTIFF CANNOT AVOID DISMISSAL BY SUGGESTING THAT HE
COULD AMEND THE COMPLAINT, AND THEN NOT ACTUALLY DO SO.**

Recognizing the frailty of his Complaint, Plaintiff attempts to avoid dismissal by discussing the possibility of amending the Complaint.  (Pl. Mem. at 6-7.)  However, Plaintiff does not actually submit any proposed Amended Complaint, nor does he offer when he will do so, or what facts he can allege in good faith to avoid dismissal.  (Id.)  Instead, Plaintiff simply notes that where a claim is "vulnerable to dismissal under Rule 12(b)(6)" – as it is here – leave to amend is generally granted unless the amendment would not cure the deficiency.  (Id. at 7.)  Plaintiff also cites to a case in which the plaintiff was "permitted to amend his complaint after discovery to add new facts" where "the new facts were merely variations on his original theme."  (Id. (citing Miller v. Selsky, 2000 U.S. App. LEXIS 29697 (2d Cir. 2000)).)  Once again, Plaintiff attempts to put the cart before the horse.  In order to reach the discovery phase, Plaintiff must first allege factual allegations sufficient to state a claim.  Miller – which in any event was prior to Twombly and Iqbal – held only that, assuming that the plaintiff sufficiently alleged a claim at the pleading stage, he could amend to add new facts later.  Indeed, the Supreme Court rejected Plaintiff's argument in Iqbal, specifically cautioning against "unlock[ing] the doors of discovery for a plaintiff armed with nothing more than conclusions."  Iqbal, 129 S. Ct. at 1950.

**IV.    PLAINTIFF'S THIRD-PARTY RETALIATION CLAIM MUST ALSO BE
DISMISSED BECAUSE THE CASELAW PRECLUDES SUCH A CLAIM.**

Plaintiff offers nothing new in the way of arguments on his third-party retaliation claim. Indeed, in response to the arguments set forth by AECOM (Def. Mem. at 14-17), Plaintiff is forced to admit that this District has already addressed Plaintiff's claims in Mutts v. Southern Connecticut State University, No. 3:04-cv-1746 (MRK), 2006 WL 1806179, at *10-11 (D. Conn. June 28, 2006), aff'd, 242 Fed. Appx. 725 (2d Cir. 2007), and rejected the viability of third-party retaliation claims because, like here, "the retaliation was based upon her husband's protected

activity and not her own." (Pl. Mem. at 23.)  Similarly, Plaintiff cannot avoid the holdings of

every Circuit to address this issue, and as such, spends three pages quoting <u>dissenting</u> opinions.

Plaintiff argues that "much has happened" since the <u>Mutts</u> case  (Pl. Mem. at 23), and cites to

<u>Crawford v. Metropolitan Government of Nashville</u>, 129 S. Ct. 846 (2009).  However, <u>Crawford</u>

does not add anything new or different to the <u>Mutts</u> holding; to the contrary, the Supreme Court

in <u>Crawford</u> reached the rather unsurprising view that employees who <u>themselves</u> oppose or

complain about discrimination during the course of an investigation of someone else's complaint

are protected against retaliation, even though they did not initiate the complaint.  <u>Id.</u> at 851-852.

The <u>Crawford</u> decision is entirely consistent with the <u>Mutts</u> decision, which sought to prevent the

very type of "me-too" pleading that Plaintiff has filed here.  <u>Mutts</u>, 2006 WL 1806179, at *11

("[E]xpanding the class of potential anti-discrimination plaintiffs . . . to include anyone whose

friends or relatives have engaged in protected activity would open the door to frivolous

lawsuits.").  Plaintiff's retaliation claims should therefore be dismissed for this reason as well.[10]

## V.    PLAINTIFF CANNOT STATE A PLAUSIBLE CLAIM FOR INTENTIONAL OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

Plaintiff does nothing to respond to the extensive caselaw cited by AECOM compelling

dismissal of his emotional distress claims, nor does he even attempt to distinguish this caselaw.

(<u>Cf.</u> Def. Mem. at 17-20 & Pl. Mem. at 27-28.)  First, Plaintiff states the elements of the claims,

but alleges no facts that even remotely suggest the type of "extreme and outrageous" conduct

that the Courts have held necessary to give rise to an emotional distress claim.  <u>See</u>, <u>e.g.</u>, <u>Lorenzi</u>

<u>v. Conn. Judicial Branch,</u> 620 F. Supp. 2d 348, 352-353 (D. Conn. 2009) (discriminatory

employment actions on the basis of race, national origin, and retaliation, absent egregious and

---

[10]    Plaintiff also fails to offer any factual allegation (as opposed to conclusory statements) to support his claim that he was subjected to retaliation.  Notably, while Plaintiff cites to <u>Gonzalez v. N.Y. State Dep't of Corr. Servs.</u>, 122 F. Supp. 2d 335 (N.D.N.Y. 2000) — a case cited and rejected by this District in <u>Mutts</u> — the Court in <u>Garel v. City of New York</u>, Case No. 04-cv-3506, 2006 U.S. Dist. LEXIS 76601, *10-11 (E.D.N.Y. Oct. 23, 2006) rejected applying that case and granted a motion to dismiss because, as here, the allegations of the complaint failed to allege facts sufficient to show that the plaintiff had actually been the victim of retaliation.

oppressive manner do not meet standard for extreme and outrageous conduct); <u>White v. Martin</u>, 23 F. Supp. 2d 203, 208 (D. Conn. 1998), <u>aff'd</u>, 198 F.3d 235 (2d Cir. 1999) (same).  As such, Plaintiff's claim of intentional infliction of emotional distress cannot survive a motion to dismiss. <u>Ruggiero v. Yale Univ.</u>, No. 3:06-cv-1165 (WWE), 2007 WL 2684631, at *3 (D. Conn. Sept. 10, 2007) (granting motion to dismiss claims for intentional infliction of emotional distress). Similarly, Plaintiff's claim of negligent infliction of emotional distress must be dismissed because the cases acknowledged by Plaintiff as controlling hold that "the mere termination of employment," is not enough to sustain such a claim, <u>Ruggiero</u>, 2007 WL 2684631, at *3 (citing <u>Parsons v. United Techs. Co.</u>, 243 Conn. 66, 88-89 (1997)).  Indeed, Plaintiff does not even argue <u>anything</u> emotional or "outrageous" with respect to Plaintiff, and instead focuses on Ms. Lyons' alleged difficulties, not Plaintiff's.  (Pl. Mem. at 28 ("plaintiff's <u>partner</u> fought for months, begging all of her supervisors . . .")).  As the undisputed caselaw makes clear, and as set out more fully in AECOM's initial memorandum of law, Plaintiff's Complaint fails to allege any facts sufficient to state his emotional distress claims, and they must therefore be dismissed as a matter of law.  (Def. Mem. at 17-20.)

## <u>CONCLUSION</u>

For the foregoing reasons, AECOM respectfully requests that the Court dismiss the Complaint in its entirety, and award such other and further relief as the Court deems appropriate.

SEYFARTH SHAW LLP

/s/ Dov Kesselman
Dov Kesselman (Federal Bar No. phv03559)
Dana L. Fleming (Federal Bar No. phv03558)
620 Eighth Avenue
New York, NY 10002
Phone:  (212) 218-5500
Fax: (917) 344-1210
dkesselman@seyfarth.com
*Attorneys for Defendant AECOM*
*USA, INC.*

Dated: October 7, 2009

CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2009, a copy of foregoing Reply Memorandum of Law In Further Support of Defendant AECOM USA, Inc.'s Motion to Dismiss was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Dov Kesselman
Dov Kesselman
620 Eighth Avenue
New York, NY 10002
Phone: (212) 218-5500
Fax: (917) 344-1210
dkesselman@seyfarth.com

11