UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFFERY MARK PARKER,<br>      Plaintiff, | :<br>:<br>: |
| v. | :     No. 3:09-cv-1078 (WWE) |
| AECOM USA, INC.,<br>      Defendant. | :<br>:<br>: |

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS

This case concerns alleged associational discrimination and retaliation by defendant AECOM USA, Inc. against plaintiff Jeffery Parker. Plaintiff asserts claims of race discrimination in violation of Title VII and the Connecticut Fair Employment Practices Act ("CFEPA") (counts I and II), retaliation in violation of Title VII and CFEPA (counts I and III), and intentional and negligent infliction of emotional distress (count IV). Defendant moves to dismiss the complaint for failure to state a claim.[1] For the following reasons, the motion to dismiss will be granted in part and denied in part.

## BACKGROUND

For purposes of ruling on a motion to dismiss, the Court accepts all allegations of the complaint as true.

In 1989, plaintiff commenced work for defendant in various engineering positions. During his employment with defendant, plaintiff received good performance reviews, bonuses for exemplary service and the Gold Performance Excellence Award for outstanding service.

---

[1] The Court will analyze the Title VII and CFEPA claims together as they are governed by the same standards. Jamilik v. Yale Univ., 2009 WL 3228775 (2d Cir. 2009).

In October 2007, plaintiff worked in defendant's office in Wallingford, Connecticut.

In December 2007, plaintiff became romantically involved with Tamika Lyons, a Project Engineer I in defendant's Philadelphia office. Plaintiff and Ms. Lyons notified defendant about their relationship.

On January 21, 2008, defendant circulated a memorandum notifying company officials that plaintiff was promoted to Associate and that he was named Business Unit Leader for the Wallingford office.

In February 2008, Ms. Lyons became aware that defendant was paying her less than white males performing equal duties. She contacted Gretchen Sullivan, the Human Resources Manager, about the professional grade and salary distribution of engineers in the Philadelphia office. She was informed that her comparators were paid more because they were Level II engineers, which required a master's degree. Ms. Lyons responded that she had completed her Master's Degree and had informed the Human Resources Department of that fact. Ms. Sullivan informed plaintiff that managers must recommend employees for promotion.

Following this conversation, Karl Brazauskas, Mid-Atlantic Regional Manager, met with Ms. Lyons about her inquiry into pay disparity and promotions. He informed her that there was a limited number of employees who could be promoted at a time.

On March 8, 2008, plaintiff and Ms. Lyons became engaged.

Plaintiff informed Ms. Lyons that positions were available for engineers at her level at defendant's Wallingford office. Ms. Lyons contacted her supervisor, Charlie Hurst, about transferring to one of these positions. Mr. Hurst agreed to speak with Mr.

Brazauskas about the transfer.

On March 31, 2008, Mr. Brazauskas informed Ms. Lyons that her request for transfer was denied, although she would receive a 3% raise in her current position. He also told her that she would have a job with the company only as long as she worked in the Philadelphia office.

Ms. Lyons lodged a complaint with Jack Ward, Human Resources Director, who informed her that she would not be transferred and that the company does not allow married or dating couples to work in the same office. She proceeded to file complaints with the Employee Support Services Group of AECOM and the AECOM Ethics Hotline. She received no responses to her complaints.

On April 22, 2008, plaintiff and Ms. Lyons attended an employee engagement meeting. At that meeting, Ms. Lyons voiced concerns that promotions appeared to be subjective and that she sought transfer to Connecticut. She was advised to contact Jim Unger, a recruiter for defendant.

Unger advised her that he had been trying to fill the Wallingford positions and that he was excited about her suitability for the position. A few days later, he informed her that she would not be allowed to transfer to defendant's Connecticut office.

In mid-May 2008, plaintiff and Ms. Lyons notified defendant that they were expecting the birth of a child.

On June 5, 2008, Ms. Lyons was discharged.

On June 19, 2008, plaintiff was discharged.

**DISCUSSION**

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984).  The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).  A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

Racial Discrimination (Counts I and III)

Defendant maintains that the allegations of plaintiff's racial discrimination claim fail the plausibility standard because the complaint lacks allegations of adverse conduct attributable to his association with Ms. Lyons.

It is well settled that to establish a prima facie claim of disparate treatment discrimination, the plaintiff must demonstrate that (1) he belongs to a protected class; (2) he was performing his duties satisfactorily; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  Although the plaintiff's initial burden is not onerous, he must show that his termination was not made for legitimate

reasons.  Thomas v. St. Francis Hospital and Medical Center, 990 F. Supp. 81, 86 (D. Conn. 1998).

If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action. The plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).

In this instance, plaintiff brings an associational race discrimination claim based on his interracial relationship with Ms. Lyons.  An employee subjected to adverse action due to an employer's disapproval of an interracial association suffers discrimination because of the employee's own race.  Holcomb v. Iona College, 521 F.3d 130, 139 (2d Cir. 2008).  Accordingly, plaintiff has satisfied the first prong of the prima facie case.

Defendant attacks plaintiff's allegation on the basis that he received a promotion one month after defendant was notified of the relationship between plaintiff and Ms. Lyons.  The favorable action subsequent to defendant's knowledge of the relationship may hinder plaintiff's ability to prove that discrimination motivated his termination, but it does not eliminate the potential that his association with Ms. Lyons may prove to be a discriminatory reason for the termination.

Defendant maintains that plaintiff cannot prove a causal connection because the firing occurred six months after defendant became aware of the relationship. Defendant argues that six months between notification of the relationship and the adverse action is too long as matter of law to prove a causal connection.  However, the Second Circuit has not drawn a bright line to define the outer limits beyond which a

temporal relationship is too attenuated to establish a causal relationship, although precedent supports the view that ten or twelve months is too long. Morisseau v. DLA Piper, 532 F. Supp. 2d 595, 617 (S.D.N.Y. 2008). Furthermore, defendant fired plaintiff approximately one month after it learned that plaintiff's relationship with Ms. Lyons would result in marriage and would produce a child. This information could also have motivated defendant's decision to terminate plaintiff. Accordingly, the Court finds that plaintiff's allegations support a plausible claim for associational discrimination and will leave plaintiff to his proof.

Retaliation (Counts II and III)

Plaintiff asserts that he was retaliated on the basis of Ms. Lyons's prior protected complaints regarding her employment status. Defendant submits that plaintiff's retaliation claims are untenable as a matter of law.

District Courts within the Second Circuit that have considered the issue of whether associational retaliation is cognizable have reached differing conclusions. See Mutts v. Southern Connecticut State Univ., 2006 WL 1806179 (D. Conn. 2006) (dismissing association retaliation claim); Gonzalez v. N.Y. State Dep't. Corr. Serv., 122 F. Supp. 2d 335, 346-47 (N.D.N.Y. 2000) (endorsing claim of associational retaliation). The Second Circuit has yet to rule on whether a claim of associational retaliation is cognizable. Mutts v. Southern Connecticut State Univ., 2007 WL 1742869 (2d Cir. 2007) (affirming Mutts on different grounds). However, the Sixth Circuit has most recently followed the Fifth, Third and Eighth Circuits in rejecting such claims. Thompson v. North American Stainless, LP, 567 F.3d 804 (6th Cir. 2009).

These circuits have recognized that third-party retaliation claims implicate the conflict between the policy objectives of anti-discrimination statutes and the statutory plain language, which requires that the individual asserting the retaliation claim also be "such individual" who has in engaged in the protected activity. Id. at 811; Mutts, 2006 WL 1806179 at *11.  The Third Circuit reasoned that respect for the constitutional separation of powers required the court to resolve the conflict in favor of the statute's plain language, noting that Congress may have such "plausible policy reasons" to exclude third-party retaliation claims as preventing an open door to frivolous lawsuits. Fogelman v. Mercy Hosp., Inc., 283 F.3d 561, 569 (3d Cir. 2002).  The Fifth Circuit observed that individuals unprotected by the plain language of the statute are few since relatives and friends will have in most cases "participated *in some manner* in a co-worker's charge of discrimination," and they would therefore fall within the protection of the statute.  See Holt v. JTM Industries, 89 F.3d 1224, 1227(5th Cir. 1996).

Thompson considered whether, as the instant plaintiff argues, the Supreme Court's reasoning in Crawford v. Metro. Gov't of Nashville and Davidson County, Tenn, – – U.S. – – , 129 S.Ct. 846 (2009) endorses the viability of third-party retaliation claims.  In Crawford, the Supreme Court overruled prior Sixth Circuit precedent requiring that an employee instigate or initiate the complaint to fall within protection of Title VII's opposition clause, 42 U.S.C. § 2000e-3(a).[2]  Crawford extended the

---

[2]The opposition clause provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made

protection of Title VII's opposition clause to an employee who was terminated after she testified involuntarily in an internal investigation of alleged sexual harassment; the Court reasoned that it would undermine the statutory objective of avoiding harm to employees if an employee who reported discrimination in answering an employer's question could be penalized.  In Thompson, the Sixth Circuit noted that "Congress carefully chose words of *action*" in crafting the statute and that Crawford remained consistent with the statutory plain language by limiting protection to individuals based on conduct rather than association.  567 F.3d at 816.

Consonant with the weight of decisional law, this Court holds that the Title VII anti-retaliation clause does not extend to a third-party based on association rather than conduct.  As the Sixth Circuit concluded, this "interpretation does not undermine the anit-retaliation provision's purpose because retaliation is still actionable, but only in a suit by a primary actor who engaged in protected activity and not by a passive bystander."  Id.   However, the Court will allow plaintiff the opportunity to replead the complaint if he can, in good faith, allege that he engaged in protected activity.

Intentional Infliction of Emotional Distress

Defendant asserts that plaintiff's claim of intentional infliction of emotional distress fails as a matter of law.  The Court agrees.

To prevail on his claim of intentional infliction of emotional distress, plaintiff must establish: (1) that defendant intended to inflict emotional distress or knew or should

---

an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

have known that its conduct would likely result in emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct in question was the cause of plaintiff's distress; and (4) that the emotional distress experienced by plaintiff was severe.  Appleton v. Board of Education of Town of Southington, 254 Conn. 205, 210 (2000).

Plaintiff is held to a stringent standard when attempting to establish that defendant's conduct was extreme and outrageous.  Sangan v. Yale University, 2006 WL 2682240, *4 (D. Conn. 2006).   In order to do so, plaintiff must present conduct that exceeds "all bounds usually tolerated by decent society."  Peytan v. Ellis, 200 Conn. 243, 254 n.5 (1986).

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts, § 46 cmt. d (1965).  See also Appleton, 254 Conn. at 210-11.  Whether plaintiff satisfies the requirement that the conduct was extreme and outrageous is initially a question for the court.  Only where reasonable minds might disagree does it become an issue for the jury.  Id. at 210.

Here, plaintiff does not allege that conduct which implicates extreme and outrageous standard.   "An employer's adverse yet routine employment action, even if improperly motivated, does not constitute extreme and outrageous behavior when the

employer does not conduct that action in an egregious and oppressive manner." <u>Miner v. Town of Cheshire</u>, 126 F. Supp. 2d 184, 196 (D. Conn. 2000).

The Court will grant defendant's motion to dismiss plaintiff's claim of intentional infliction of emotional distress.

<u>Negligent Infliction of Emotional Distress</u>

Defendant argues that the claim of negligent infliction of distress must also be dismissed as not cognizable.

In order to prevail on a claim of negligent infliction of emotional distress, plaintiff must demonstrate that defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that this distress might result in illness or bodily harm.  See <u>Larobina v. McDonald</u>, 274 Conn. 394, 410 (2005). The mere termination of employment, even where it is wrongful, is not alone enough to sustain a claim for negligent infliction of emotional distress.  <u>Parsons v. United Technologies Corp.</u>, 243 Conn. 66, 88-89 (1997).  Rather, the complaint must allege that severe conduct arose during the termination process, which was performed in an inconsiderate, humiliating or embarrassing manner.  <u>Adams v. The Hartford Courant and Tribune Co.</u>, 2004 WL 1091728, *4 (D. Conn. 2004).  Plaintiff's complaint fails to do so.  Accordingly, the Court will dismiss this claim.

## **CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss [doc. #20] is GRANTED in part and DENIED in part.   The motion to dismiss is granted as to the claims of retaliation, intentional infliction of emotional distress, and negligent infliction of

emotional distress.  Plaintiff is afforded leave to replead the retaliation claims in accordance with the standard articulated in this ruling within 21 days of this ruling's filing date.


_____/s/_____
Warren W. Eginton
Senior U.S. District Judge


Dated at Bridgeport, Connecticut this __17_th day of February, 2010.